# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

JEREMY J. S.,               )
                            )
        *Plaintiff*        )
                            )
v.                          )   No. 1:18-cv-00192-LEW
                            )
NANCY A. BERRYHILL,         )
*Acting Commissioner of Social Security,*  )
                            )
        *Defendant*        )

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) failed to find his hereditary sensory axonal neuropathy a severe impairment, (ii) formulated a residual functional capacity ("RFC") unsupported by substantial evidence, and (iii) erroneously relied upon faulty vocational expert ("VE") testimony. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 2-17. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

relevant part, that the plaintiff had the severe impairments of left knee pain, personality disorder, depressive disorder, and anxiety disorder, Finding 2, Record at 15; that he had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he was limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling, should avoid moderate exposure to extreme cold, humidity, dampness, and respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas, should avoid unprotected heights or machinery with external moving parts, and could carry out simple tasks in two-hour periods over the course of a normal workday and workweek, adapt to simple changes, and have brief and superficial interaction with co-workers and supervisors, but not with the general public, Finding 4, *id.* at 18; that, considering his age (39 years old, defined as a younger individual, on the date his application was filed, April 28, 2014), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id.* at 23-24; and that he, therefore, had not been disabled from April 28, 2014, through the date of the decision, March 16, 2017, Finding 10, *id.* at 24-25. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The statement of errors implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Step 2 Finding

The plaintiff first argues that the ALJ should have found his hereditary sensory axonal neuropathy an additional severe impairment at Step 2. *See* Statement of Errors at 2-10. He relies on an EMG study with accompanying diagnosis and his testimony. *See id.*

The ALJ discussed the plaintiff's neuropathy at Step 2:

> As for his hereditary sensory axonal neuropathy, I find that the EMG study revealed moderately severe sensory axonal neuropathy. In addition, physical examinations have indicated some diminished sensation of his hands and feet. However, the [plaintiff] has never followed up with neurology, despite several referrals. He has also reported that his neuropathy has improved with medication. Thus, I find that

>due to the limited treatment and improvement with medication that his neuropathy
>is a non-severe impairment.

Record at 16 (citations omitted).

The plaintiff contends that this finding is unsupported by substantial evidence because (i) the two agency nonexamining consultants on whose opinions the ALJ relied did not factor in his neuropathy, which was subsequently diagnosed, (ii) contrary to the ALJ's finding, he did follow up with neurology, and (iii) the ALJ relied on his improvement with medication without taking into account its significant side effects. *See* Statement of Errors at 5-8.

Nonetheless, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). Even assuming *arguendo* that the ALJ erred in failing to find the plaintiff's neuropathy severe, the plaintiff fails to make this showing.

The plaintiff contends that the errors of which he complains were not harmless because "[t]he evidence indicates that [his] neuropathy impacts his ability to use his hands and arms" and "to ambulate and sit for prolonged periods of time[,]" Statement of Errors at 9-10, and, yet, the ALJ failed to assess either manipulative or postural limitations, *see id*. at 8-9. He asserts that such limitations would have ruled out the three jobs on which the ALJ relied at Step 5, all of which require frequent handling and occasional or frequent fingering and are categorized as light jobs, which require lifting up to 20 pounds at a time and "'a good deal of walking or standing or . . . sitting most of the time with some pushing and pulling of arm or leg controls.'" *Id*. at 9-10 (quoting 20 C.F.R. § 416.967(b)).

Yet, as noted above, the plaintiff relies on the fact of his neuropathy diagnosis, his reports to providers of his symptoms, and his own testimony to support this proposition. *See id*. at 3-4, 6-9.

To the extent that the plaintiff argues that he met his *de minimis* burden at Step 2 by showing that his hereditary sensory axonal neuropathy was diagnosed, *see id.* at 3-4, a diagnosis alone does not evidence a severe impairment, *see, e.g.*, *Brown v. Colvin*, No. 2:13-cv-473-JHR, 2015 WL 58396, at *2 (D. Me. Jan. 5, 2015). Even with a medical diagnosis, a claimant must show that the impairment "significantly limited his ability to do basic work activity at the relevant time." *LaBonte v. Astrue*, Civil No. 09-358-P-S, 2010 WL 2024895, at *2 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 17, 2010).

To the extent that the plaintiff relies on his own reports and testimony concerning his symptoms, *see* Statement of Errors at 3-4, 6-9, he does not separately challenge the ALJ's finding that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[,]" Record at 20.[2]

Remand, accordingly, is unwarranted on the basis of this point of error.

## B. Step 4 Finding

The plaintiff next argues that the ALJ's determination of his physical and mental RFC was not supported by substantial evidence. *See* Statement of Errors at 10-17. I am unpersuaded.

---

[2] In so finding, the ALJ expressly took into account the plaintiff's reported "neuropathic symptoms in his hands and feet[,]" "reduced grip strength[,]" and shaking in his hands that he testified prevented him from tattooing and caused difficulty painting. Record at 19.

### 1. Physical RFC

The plaintiff first challenges the ALJ's failure to assess limitations related to his neuropathy, even though she deemed it nonsevere. *See id.* at 10. Although an ALJ is required to consider all medically determinable impairments when assessing RFC, *see* 20 C.F.R. § 416.945(a)(2), an ALJ is not required to find a limitation for each impairment, *see, e.g.*, *Leech v. Berryhill*, No. 2:16-cv-00487-GZS, 2017 WL 2817023, at *4 (D. Me. June 28, 2017) (rec. dec., aff'd July 26, 2017) (requiring "only that all of a claimant's medically determinable impairments, including those that are nonsevere, be considered in assessing functional restrictions at Step 4, not that functional restrictions necessarily be found to result from nonsevere impairments").

The plaintiff contends that the ALJ erred in acknowledging that physical examinations had indicated some diminished sensation in his hands and feet but failing to find any corresponding work-related limitations. *See* Statement of Errors at 10 (citing Record at 497). As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 14) at 10, the plaintiff does not attempt to correlate the finding of diminished sensation with any specific functional limitations. Remand, accordingly, is unwarranted on this basis. *See, e.g., Pressey v. Berryhill*, No. 2:16-cv-00425-JDL, 2017 WL 2731308, at *6 (D. Me. June 25, 2017) (rec. dec., *aff'd* Aug. 28, 2017) ("[W]hile the plaintiff has complained generally about the insufficiency of the restrictions afforded by the RFC, he has failed to identify a specific physical limitation stemming from his medical impairment that the ALJ should have made a part of his RFC. Without more, this court can only conclude that any error in this regard by the [ALJ] was harmless.") (citations and internal quotation marks omitted).

## 2. Mental RFC

The plaintiff argues that the ALJ's assessment of his mental RFC is unsupported by substantial evidence because she (i) gave great weight to the opinions of agency nonexamining psychologists Mary A. Burkhart, Ph.D., and Lewis F. Lester, Ph.D., although their findings clashed in some respects and are difficult to reconcile with the opinion of agency examining psychologist John S. Hale, Jr., E.D.D., which they purported to give great weight, (ii) erroneously gave partial weight to the Hale opinion, and (iii) inexplicably deviated from the Burkhart and Lester opinions, interpreting raw medical evidence in doing so. *See* Statement of Errors at 11-17. I find no reversible error.

The ALJ found that the plaintiff could "sustain attention and concentration long enough to carry out simple tasks in two hour periods over the course of a normal workday/week[,]" could "adapt to simple changes[,]" and could "have brief and superficial interaction with co-workers and supervis[ors], but no interaction with the general public, as part of his work duties." Finding 4, Record at 18.

She noted that she found the Burkhart and Lester opinions "persuasive" because "they [were] from acceptable medical sources, who had the opportunity to review much of the medical evidence of record" and who were familiar with the commissioner's disability programs, and because later-submitted evidence would not have materially altered their determinations, as it was "consistent with the record they reviewed." *Id.* at 21-22. She gave partial weight to the assessment of Dr. Hale as it was "mostly consistent" with the Burkhart and Lester opinions, and Dr. Hale was an examining source. *Id*. at 22. However, she otherwise discounted it, explaining:

> I note that Dr. Hale never precluded the [plaintiff] from being able to work despite his mood cycles. In addition, there are no instances in the longitudinal medical record of mental health symptoms that required acute attention. Furthermore, the

> [plaintiff]'s symptoms appear controlled on medication, which [he] was taking during the time of this assessment.

*Id*. at 22.

### a. Reliance on Burkhart, Lester Opinions

In arguing that Dr. Burkhart's findings clash with those of Dr. Lester, the plaintiff gives unwarranted emphasis to the differences between their checkbox answers, *see* Statement of Errors at 13-14, when their official RFC assessments were contained in their narratives, *see, e.g.*, *Riley v. Astrue,* No. 06-95-B-W, 2007 WL 951424, at *6 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 18, 2007). The only difference in their RFC assessments was that Dr. Burkhart found that the plaintiff could have *no frequent contact* with the public, *see* Record at 120, whereas Dr. Lester found that he could *not interact* with the public, *see id.* at 138. However, as the commissioner argues, this is "a distinction without import because the ALJ's RFC assessment accepted the more limiting opinion and found Plaintiff could not interact with the public as part of his work duties." Opposition at 13; *see also* Finding 4, Record at 18.

Nor, as the commissioner argues, *see* Opposition at 13, was it necessary for the ALJ to reconcile the Burkhart and Lester opinions with those of Dr. Hale. As a threshold matter, Dr. Lester did not give Dr. Hale's assessment great weight as the plaintiff contends, *see* Statement of Errors at 14; rather, he gave "other" weight to Dr. Hale's report because it "reflect[ed] both objective observations and unsupported claimant self-report[,]" Record at 135. In any event, both Drs. Burkhart and Lester relied not only on their interpretations of the Hale report but also on the then-available evidence of record as a whole. *See id*. at 114-16, 135.

### b. Discounting of Hale Report

The plaintiff next argues that the ALJ erred in discounting the Hale report on the bases that Dr. Hale never precluded him from being able to work and that his symptoms appeared to be

controlled on medication. *See* Statement of Errors at 16. He observes that Dr. Hale could not have been expected to offer an opinion on whether he could be expected to work, which is an issue reserved to the commissioner, and that Dr. Hale noted that his coping skills were "'not consistently effective.'" *Id*. (quoting Record at 567). Nonetheless, the ALJ considered and provided an adequate explanation for her weighing of the Hale report.

On the first point, the plaintiff is correct that the question of whether a claimant is disabled is reserved to the commissioner. *See id*.; 20 C.F.R. § 416.927(d)(1), (3). However, at oral argument, counsel for the commissioner persuasively argued that, despite the ALJ's word choice, she meant to convey that Dr. Hale assessed no specific limitations that would have precluded work. *See also* Opposition at 13-14; Record at 567 (the plaintiff "*seems* to have the capacity to follow work-related rules and authority unless agitated and overwhelmed" and "*seems* to have cycles when he can be over-reactive and respond inappropriately to authority or expectations[,]" which "*likely* would negatively impact his ability to be consistently dependable and reliable in the workplace") (emphasis added).

On the second point, "[t]he mere fact that a claimant can point to evidence of record supporting a different conclusion" – in this case, that the plaintiff's symptoms were not controlled on medication – "does not, in itself, warrant remand[,]" *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *appeal docketed*, No. 17-1889 (1st Cir. Sept. 5, 2017). "[I]t is not the job of the court to reweigh the evidence." *Id*.

Finally, the ALJ provided a third rationale for discounting the Hale report that the plaintiff does not challenge: that there were "no instances in the longitudinal medical record of mental health symptoms that required acute attention." Record at 22.

9

The plaintiff supplies no persuasive reason to disturb the ALJ's weighing of the Hale opinion.

### c. Deviation from Burkhart, Lester Opinions

The plaintiff finally contends that the ALJ erred in assessing a mental RFC that diverged in one respect from those of Drs. Burkhart and Lester. *See* Statement of Errors at 16-17. Specifically, while Dr. Burkhart deemed the plaintiff "able to interact with coworkers and supervisors," Record at 120, and Dr. Lester found that he could "interact with co-workers and supervisors in a normal work setting[,]" *id.* at 138, the ALJ concluded that he could "have brief and superficial interaction with co-workers and supervis[ors]," Finding 4, *id.* at 18.

The plaintiff asserts that the ALJ "failed to provide sufficient explanation for contradicting the opinions of Dr. Burkhart and Dr. Lester . . . [and] interpreted raw medical data, which she is not qualified to do." Statement of Errors at 16 (citing *Tucker v. Barnhart*, No. 06-27-B-W, 2006 WL 3519309 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 6, 2006)). However, what the plaintiff characterizes as a contradiction – the addition of "brief and superficial" – is a greater limitation than those assessed by Drs. Burkhart or Lester, whose opinions the ALJ gave great weight. As the commissioner rejoins, the "[p]laintiff is not entitled to remand when the ALJ accepts the State agency opinions and goes even further by imposing greater limitations in the RFC assessment." Opposition at 14; *see also, e.g.*, *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015) ("[A] claimant may not obtain a remand on the basis of an RFC that is more favorable than the evidence would otherwise support.").

In *Tucker*, by contrast, the ALJ assessed a mental RFC that deviated in at least some respect from all expert opinions of record without explaining which of the expert findings he rejected or accepted, and, from all that appeared, "relied on his own assessment of the raw medical record to derive" the claimant's mental RFC. *See Tucker*, 2006 WL 3519309, at *2-3.

Remand, accordingly, is unwarranted on the basis of this point of error.

### C. Vocational Expert Testimony

The plaintiff's third and final point of error, that the ALJ relied at Step 5 on irrelevant VE testimony, hinges entirely on the success of at least one of his prior points of error. *See* Statement of Errors at 17. Because the first two points are without merit, reversal and remand are not warranted on the basis of the third point.

### II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of May, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge